UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
R.C. and M.B., on behalf of their minor child, N.C.,   **ANSWER AND**
                                                       **COUNTERCLAIM**
                     Plaintiffs,

  -against-                                              07 CIV 2806
                                                       (MDF)
BOARD OF EDUCATION OF THE HYDE PARK                    ECF Case
CENTRAL SCHOOL DISTRICT,

                     Defendant.
------------------------------------------------------------------------x

      Defendant, Board of Education of the Hyde Park Central School District (the "District"), by its attorneys, Donoghue, Thomas, Auslander & Drohan, LLP, as and for its Answer to the Complaint of R.C. and M.B., on behalf of their minor child, N.C., hereby states and alleges the following:

      1.    As to the allegations contained in Paragraph "1" of the Complaint, respectfully refers the Court to the December 22, 2005 decision of the State Review Officer ("SRO") for a determination of its full legal meaning and import.

      2.    Denies the allegation contained in Paragraph "2" of the Complaint, but alleges that this Court has jurisdiction over this action pursuant to 20 U.S.C. §1415 (i)(3)(A).

      3.    Admits the allegation contained in Paragraph "3" of the Complaint.

      4.    As to the allegations contained in Paragraph "4" of the Complaint, admit that the student N.C. is classified as learning disabled by the District's Committee on Special Education ("CSE"), but denies knowledge or information sufficient to form a belief as to the truth of the allegation regarding the Plaintiff's residence.

      5.    As to the allegations contained in Paragraph "5" of the Complaint, affirmatively alleges that parents have no obligation to comply with the privacy provisions of the Family Educational and Privacy Rights Act ("FERPA").

6. Admits the allegations contained in Paragraph "6" of the Complaint.

7. Denies the allegations contained in Paragraph "7" of the Complaint.

8. Admits the allegations contained in Paragraph "8" of the Complaint.

9. As to the allegations contained in Paragraphs "9" and "10", the District respectfully refers the Court to Dr. Smoller's complete evaluation for a determination of its full meaning and import.

10. Denies the allegations contained in Paragraph "11" and Paragraph "12" of the Complaint and respectfully refers the Court to the 2004-2005 IEP for a determination of its full meaning and import.

11. Denies the allegations contained in Paragraph "13" of the Complaint.

12. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "14" of the Complaint, except alleges that while in class, N.C. was described by his teachers as an "extremely motivated," "enthusiastic" and a very "conscientious" student, an "active participant" who produced "excellent" quality of work, and a student who "did everything that was asked of him in the classroom and for homework; and further alleges that N.C. made the academic honor roll for eight consecutive marking periods beginning in the 2003-2004 school year through the end of the 2004-2005 school year while attending the Haviland Middle Schoo; and that the grades he earned were an adequate reflection of the work he produced in class and on tests and quizzes.

13. Denies the allegations in Paragraphs "15" and "16", except admits that the CSE met initially on March 29, 2004 to develop N.C.'s IEP for the 2004-2005 school year, and alleges that upon subsequent written request from the Parents, the CSE reconvened on June 8, 2004 to consider

the Parents' request for: (1) a summer reading program; (2) an auditory training device; and (3) a reading program; and that on June 8, 2004, the CSE added the summer program and FM auditory trainer to N.C.'s 2004-2005 IEP, but denied the reading program, and instead added a resource room class to address N.C.'s reading decoding deficit; and further affirmatively alleges that N.C. does not require an intensive 1:1 reading program to derive educational benefit from his IEP.

14. Denies the allegations in Paragraph "17" of the Complaint and respectfully refers the Court to the complete test results from the Woodcock Johnson III Tests Achievement ("WJ-III Achievement Tests") in March 2004 and January 2005 for a determination of their full meaning and import.

15. As to the allegations in Paragraph "18" of the Complaint, admits that N.C. scored at "Performance Level 2" on the New York State Grade 8 English and Social Studies Tests, but further alleges that N.C. scored at "Performance Level 3" on the New York State Grade 8 Math and Science Tests (which demonstrates proficiency) and respectfully refers the Court to the results from all four tests for a determination of their full meaning and import.

16. As to the allegations in Paragraph "19" of the Complaint, admits that N.C. took the WJ-III Achievement Tests on January 3, 2005, and respectfully refers the Court to the complete results from those tests for a determination of their full meaning and import.

17. Denies the allegations in Paragraphs "20" and "21" of the Complaint and respectfully refers the Court to the 2005-2006 IEP for determination of its full meaning and import.

18. Denies the allegations in the first paragraph numbered "22" of the Complaint.

19. Denies the allegations in the second paragraph numbered "22" of the Complaint, except admits that N.C.'s parents gave written notice to the District on August 19, 2005, that they were enrolling N.C. at the Kildonan School for the 2005-2006 school year.

20. Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph "23" of the Complaint, except admits that the District held a CSE meeting on August 31, 2005.

21. Admits the allegations contained in Paragraph "24" of the Complaint.

22. Denies the allegations in Paragraph "25" of the Complaint, except admits, upon information and belief, Dr. Goetze evaluated N.C. in 2005, and affirmatively alleges the parents never informed the District that they had sought a private evaluation of N.C.

23. As to the allegations in Paragraph "26", the District respectfully refers the Court to Dr. Goetze's confidential Psycho-Educational Report for a determination of its full meaning and import.

24. As to the allegations contained in Paragraph "27", the District, and respectfully refers the Court to Dr. Goetze's confidential Psycho-Educational Report, and alleges that Dr. Goetze's conclusions are inaccurate.

25. As to the allegations contained in Paragraph "28", admits that Dr. Goetze recommended N.C. be placed in a private school educating severely learning disabled students, which would offer small group and daily one-to-one reading instruction, but alleges that such recommended placement is unsupported by the evaluations, as well as N.C.'s demonstrated progress in the District-operated programs, and would contravene the least restrictive environment requirements of the IDEA.

26. Admits the allegations in Paragraph "29" of the complaint.

27. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph "30" of the Complaint.

28. Denies the allegations contained in Paragraphs "31" and "32" of the Complaint.

29. Denies the allegations in Paragraph "33" of the Complaint, except admits that the Kildonan School tested N.C. in October, 2005, and May, 2006, and respectfully refers the Court to the complete results from those standardized tests for a determination of their full meaning and import.

30. Denies the allegations in Paragraph "34" of the Complaint.

31. Admits the allegations in Paragraph "35", "36", and "37" of the Complaint.

32. Admits the allegations in Paragraph "38" and respectfully refers the Court to the decision of the SRO for a determination of its full meaning and import.

33. Admits the allegations in Paragraph "39".

### AS TO THE ALLEGATIONS OF THE FIRST CAUSE OF ACTION

34. As to the allegations of Paragraph "40", the District repeats and restates its previous admissions, denials and other responses with the same force and effect as if set forth at length herein.

35. As to the allegations in Paragraph "41", respectfully refers the Court to those cited provisions of the IDEA for a determination of their full legal meaning and import.

36. Denies the allegations in Paragraphs "42", "43", "44", "45", "46", "47", "48", "49", and "50" of the Complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

37. The SRO's determination that the District provided to N.C. a free appropriate public education in the 2004-2005 school year should be accorded due weight by the District Court, as it is supported by the record in the underlying administrative proceedings.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

38. The SRO's determination that Kildonan was not an appropriate unilateral private school placement of N.C. should be accorded due weight by the District Court, as the record supports the SRO's findings that Kildonan:

(a) failed to address N.C.'s diagnosed seizure disorder;

(b) failed to address his significant auditory processing disorder;

(c) failed to address his combined expressive-receptive language disorder;

(d) failed to address his need for reading instruction in content area classes; and

(e) failed to address his deficits in reading and understanding of the content of the material in content area classes.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

39. Unlike Kildonan, whose student body solely comprises learning disabled students, the District's placement in the public school setting provided access to non-disabled peers and properly represented the "least restrictive environment" for N.C.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

40. IDEA's mandate that students be educated in the least restrictive environment possible (to the extent that can be accomplished with supplementary aides and services) requires

rejection of the parents' unilateral placement of N.C. at Kildonan, as the student's needs are not so severe that he must be educated in a school solely for learning disabled students the entire day.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

41.     The equities in the case do not otherwise warrant tuition reimbursement.

## AS AND FOR A COUNTERCLAIM AGAINST PLAINTIFFS

42.     The District repeats and re-alleges each and every admission, denial or other response interposed in response to the allegations in paragraphs "1" through "39" as if more fully set forth herein at length.

43.     The District respectfully appeals that portion of the SRO's decision that found inappropriate the District's placement for the 2005-2006 school year.

44.     To meet their burden regarding the District's alleged failure to provide a free appropriate public education, N.C.'s parents must prove that (a) the IEP was not reasonably calculated to enable the child to receive meaningful educational benefit and (b) the District did not comply with the procedural requirements of the IDEA. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176 (1982).

45.     Throughout seventh and eighth grades, N.C. made the Haviland Middle School academic honor roll in eight consecutive marking periods, while receiving special education and related services under IEPs that (a) did not include either specific reading decoding or spelling goals and objectives; and (b) did not include an intensive individualized multi-sensory reading decoding program.

46.     Although N.C.'s performance on the WJ-III Achievement Tests in reading decoding in 8th grade had declined, according to his special education teachers that year, he demonstrated a

strong ability to read and correctly interpret math word problems; improved reading comprehension over the course of eighth grade; and that the grades he earned on tests and quizzes accurately reflected his ability to read and write.

47. The 2005-06 IEP recommended for N.C at the March 8, 2005 CSE meeting included a blend of smaller 15:1 departmentalized classes in English and Social Studies, a daily resource room to specifically address his reading deficits and inclusion classes with a direct consultant teacher services in Math and Science.

48. Because N.C. was transitioning into High School and would be attending some larger inclusion classes in Math and Science, the CSE recommended additional program modifications such as a copy of class notes, classifying directions and checking for understanding, and increased test modifications from double time to triple time.

49. Based on progress shown in areas of reading, writing and math during eighth grade, and the fact that he was entering into High School where the academic program would focus more on his ability to read and comprehend information in his content area classes is the change to one reading comprehension goal and objective was appropriate.

50. The 2005-2006 IEP recommended on March 8, 2005 was procedurally and substantively appropriate in that: (a) all of the required participants were present at the March 8, 2005 CSE meeting, including the parent, CSE chairperson, parent representative, school psychologist, a regular education teacher of N.C. and N.C.'s special education teacher; (b) the parent meaningfully participated in the IEP the decision-making process; and (c) offered a blend of special education and related services that would address N.C.'s documented reading, writing receptive and

expressive and auditory processing deficits in the least restrictive environment and was likely to produce progress, not regression.

51. Therefore, because the 2005-2006 IEP was both reasonably calculated to enable the child to receive meaningful educational benefit and the developed in accordance with the procedural requirements of the IDEA, the SRO's finding that the District did not provide a free appropriate public education for the 2005-2006 school year was erroneous.

WHEREFORE, the Defendant respectfully requests that the Court

(a) affirm the SRO's finding that the District's IEP for the 2004-2005 school year offered to N.C. an appropriate education;

(b) affirm the SRO's finding that the parent's placement at Kildonan was inappropriate;

(c) reverse the SRO's finding that the District's IEP for the 2005-2006 school year did not offer to N.C. an appropriate education; and

(d) grant such other, further, and different relief as the SRO determines to be just and proper under the circumstances.

Dated: Hopewell Junction, NY
       May 8, 2007

Yours, etc.,

DONOGHUE, THOMAS, AUSLANDER & DROHAN, LLP

By:    __/S/Daniel Petigrow_____
       Daniel Petigrow (DP7422)
       Attorneys for Defendant
       2517 Route 52
       Hopewell Junction, New York 12533
       Tel. No. 845/227-3000
       Fax No. 845/227-6873

TO:    Linda Geraci, Esq.
         Law Offices of Linda Geraci, Esq.
         21 Old Main Street
         Suite 203
         Fishkill, New York 12524