UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
R.C. and M.B., on behalf of their minor child, N.C.,

                              Plaintiffs,

-against-

BOARD OF EDUCATION OF THE HYDE PARK
CENTRAL SCHOOL DISTRICT,

                              Defendant.

------------------------------------------------------------X

**PLAINTIFFS' REPLY TO DEFENDANT'S RULE 56.1 STATEMENT**

07 CIV 2806
(MDF)

ECF Case

      Plaintiffs', R.C. and M.B., on behalf of their minor child, N.C., by their attorney, Linda A. Geraci, answer the allegations set forth in Defendant's Rule 56.1 Statement as follows:

      1.    Admit the allegations contained in paragraph 1. Affirmatively alleges that the District's initial evaluation also revealed that N.C. was reading and writing at a 1st and 2nd grade level in October 1999, 3rd grade. (P-5)

      2.    With regards to the allegations contained in paragraph 2, admit that during elementary school N.C. received resource room, direct consultant teacher services and speech/language therapy. Deny that these addressed the documented deficits.

      3.    Admit that speech/hearing and neuropsychological evaluations were conducted between March and October 2002. Deny that the speech evaluator found significant deficits in the areas listed. Affirmatively allege that the neuropsychologist found significant deficits in reading, writing and spelling. (P-18) Admit that he recommended speech/language therapy. Affirmatively allege that Dr. Smoller's first recommendation was that N.C. attend "an intensive

program of educational remediation", taught by a teacher skilled in working with children with language deficits, with "multiple opportunities for individualized one-on-one tutorial instruction". He further stated that the Kildonan School would be able to provide the type of program he recommended. Admit that Dr. Smoller stated that processing deficits might interfere with the exclusive use of a phonics-based method of reading instruction, but affirmatively allege that he also stated that, in addition to a sight word or integrated multisensory approach, "some time should also be reserved for training in phonemic awareness." (P-18, p. 8-9)

  4. Admit the allegations contained in paragraph 4.

  5. Admit the allegations contained in paragraph 5.

  6. With regard to the allegations contained in paragraph 6, deny that N.C. demonstrated academic success in 7th grade. Admit that he received the grades alleged and was named to the Honor Roll, but affirmatively allege that those grades and honor roll placement carry little weight due to the modified nature of his classes and the fact that his mother did most of his homework. (Tr. 624, 630, 637, 645)

  7. With regard to the allegations contained in paragraph 7, admit that the Social Studies teacher made these comments, but deny that the quality of N.C.'s work was excellent. Affirmatively allege that N.C.'s mother did most of his Social Studies homework. (Tr. 624, 630, 637, 645) Admit that M.B. stated that N.C. was doing well in his area of strength (math). Affirmatively allege that she continued to note his weaknesses in reading and writing. (D-H) Affirmatively allege that her comment regarding the small class having helped him referred to his improved ability to focus in a small class. (D-H)

  8. Admit the allegations in paragraph 8, except affirmatively allege that Lisa Macklin,

2

the school psychologist who administered the Woodcock-Johnson Test of Cognitive Abilities in 2004, testified that the General Intellectual Ability score of 85 was not accurate reflection of his intellectual ability. (Tr. 969)

9. Admit the allegations contained in paragraph 9.

10. Admit that these were the scores N.C. obtained on the Woodcock-Johnson III Tests of Achievement on March 15, 2004. (P-30) Affirmatively allege that above the Broad Reading printed score of 85 there is a handwritten notation of 104, and that the erroneous score of 104 was listed on the 2004-2005 IEP. Affirmatively allege that N.C.'s spelling score on this test was 67, at the 1st percentile. (P-30)

11. Admit the allegations contained in paragraph 11.

12. Admit that N.C.'s mother requested that the CSE meet again on June 8, 2004 to consider a summer reading program, use of an auditory trainer and a reading program for the 2004-2005 school year. Admit that the CSE did not recommend a specific one-to-one reading program and that it recommended resource room. Deny that the resource room addressed N.C.'s reading needs, or that it was even intended to do so, as the District failed to provide phonics materials to the resource room teacher to address the decoding needs District staff acknowledged. (Tr. 269) Admit the remainder of the paragraph, except deny that a multisensory approach was provided for reading activities during the 2004-2005 school year.

13. Deny that N.C. performed successfully during the 2004-2005 school year. Deny that the grades given are meaningful in that N.C.'s mother did most of his homework, the curriculum was modified, and the teacher admitted she graded him in comparison to other special education students in her class. (Tr. 758, 791)

14. Deny the allegations in paragraph 12, except admit that he was conscientious and motivated.

15. Deny that the resource room focused on reading and writing skills. Deny that multisensory approaches were used. Affirmatively allege that the resource room teacher, Ms. Sullivan, admitted she spent only 7 minutes per day with N.C. and did not work with him at all on decoding. (Tr. 269)

16. With regard to the allegations in paragraph 16, deny that the CSE recommended resource room to address reading deficiencies for the 2005-2006 school year. Admit the remainder of the paragraph.

17. Admit the allegations contained in paragraph 17.

18. With regard to the allegations contained in the paragraph numbered 19 out of sequence, admit that Dr. Henry Goetze evaluated N.C. in August 2005. Affirmatively allege that he was unable to speak with teachers or therapists during the summer. Admit Dr. Goetze had not observed the departmentalized program. Affirmatively allege that he was familiar with the range of special education programs at the District, as well as with departmentalized classes in general. (Tr. 578-579)

19. With regard to the allegations contained in paragraph 20, admit that Dr. Goetze testified that N.C.'s total reading score was did not improve overall between 2000-2004 but that his decoding scores were variable. Affirmatively allege that Dr. Goetze examined testing between 1999 and 2005 and that regression in reading is apparent across the full range of years. (P-42, p. 3) Admit that the District's IEP for 2003-2004 contained incorrect scores and that Dr. Goetze suspected they were errors. Deny that Dr. Goetze's report relied on incorrect scores in

concluding N.C. had regressed in reading. (P-42, p. 3)

20. With regard to the allegations in paragraph 21, admit that Dr. Goetze was surprised at N.C.'s 8th grade English and Social Studies test scores. Affirmatively allege that Dr. Goetze testified that scores in the "2" range are below proficient. Admit that Dr. Goetze testified that he was aware that reading instruction at Kildonan occurs mainly in the language tutorials, and affirmatively allege that Dr. Goetze recommended Kildonan as an appropriate placement for N.C. Affirmatively allege that Dr. Goetze never recommended that N.C. receive "direct reading instruction" in content area classes, nor did any other professional who had ever evaluated or taught N.C. Deny that Kildonan does not provide writing instruction in content classes. Affirmatively allege that Dr. Goetze recommended N.C. receive one-to-one reading instruction because "given N.'s advancing age, there is little time remaining to help him to learn up to his potential and to be able to function within society with basic reading and writing proficiency." (P-42, p. 7)

21. With regard to the allegations contained in paragraph 22, admit that Kildonan specializes in the education of children with language based reading disabilities. Admit that Dr. Lane testified that children are not required to independently complete reading and writing assignments before they have been taught the skills to do so, and affirmatively allege that Kildonan provides significant instructional support, as well as accommodations, to students to assist them in improving their reading and writing skills. Admit that Kildonan does not employ speech/language therapists. Affirmatively allege that Kildonan addressed the four speech/language goals on N.C.'s 2005-2006 IEP. (Tr. 371-373)

22. With regard to the allegations contained in paragraph 23, admit that Dr. Robert

Lane, Kildonan's Academic Dean, did not provide direct instruction to N.C. during the 2005-2006 school year. Affirmatively allege that Dr. Lane was well qualified to provide the testimony he provided by virtue of the following: he personally administered academic testing to N.C.; he was fully familiar with N.C.'s educational records; he observed him in content classes and the language tutorial four times between October and April; he held frequent discussions about N.C. with all of his teachers, including discussions about providing additional modifications and accommodations for N.; and he met individually with N.C. on a formal basis twice to discuss his progress. (Tr. 344, 350-353) Deny the remainder of the paragraph, except admit that "students know they are not going to be required to read in class", and that Kildonan teachers read aloud in content classes, as one instructional strategy. Affirmatively allege that N.C. volunteered to read in Literature class and that District witnesses admitted that N.C.'s 8th grade teachers and speech/language therapist read aloud to him as well, and that both Ms. Cray and Ms. Beaudry believed that he benefitted from that method of instruction. (Tr. 363, 788, 820)

23. In response to the allegations contained in paragraph 24, affirmatively allege that N.C.'s Global Studies grades ranged from C+ to B for the year, and that he did not fail any quarter or any test or assignment. (P- 55, 56, 57, 72) Affirmatively allege that the Global Studies teacher individualized his instruction to provide further support to N.C. by providing preferential seating, copy of class notes, and assistance in highlighting reading material. (P- 55, 56,72 Deny that N.C. rarely participated in class discussions, and affirmatively allege that his teachers made the following comments about class participation:

    a.    "when he had a question that he felt was important, he was determined to get an answer" (P-55, p. 3- Health and the Human Body)

b.  "N. was a model participant in terms of class discussion and debate. He routinely volunteered to answer open questions despite the fact that it was not always easy or natural for him to do so." (P-55, p. 4- American Literature)

c.  "He was particularly effective in asking and answering questions during class discussions." (P-55, p. 5- Global Studies I)

d.  "N. participates well, showing a decent grasp of the material." (P-55, p. 8- American Literature)

e.  "N....is an active participant in class discussions." (P-55, p. 8- Science)

f.  "N. continues to be a solid class participant; he volunteered for open questions...and was active is discussions." (P-56- Literature)

g.  "N. participates actively in class discussions." (P-56- Science)

h.  "N. participated well this term. For directed questions..he was able to produce, clear, detailed summaries and make thoughtful , well supported points." (P-57, p. 3- American Literature)

i.  "...he volunteered to read aloud in class nearly daily, and he answered directed questions with less hesitation and more certainty....His growth was impressive." (P-72, p. 3- American Literature)

j.  "N. was a quiet but willing participant in class this year. He was able to answer some of the questions I would ask him directly during class regarding content from reading." (P-72, p. 4- Global Studies I)

Admit that N.C. scored at that the 5th and 4th percentiles for accuracy and fluency on the Gray Oral Reading Test administered in May 2006. Affirmatively allege that these scores represented progress when compared to his scores on the Gray Oral Reading Test administered in October 2006. (P-72, p. 8) Affirmatively allege that all standardized testing performed at Kildonan demonstrated progress in reading and spelling when compared to N.C.'s performance on standardized measures of reading and spelling given during his tenure in the District. (P-72, p. 8)

24. Admit the allegations contained in paragraph 25.

25. With regard to the allegations contained in paragraph 26, admit that these were the findings of the Hearing Officer.

26. Admit the allegations contained in paragraphs 27 and 28. Respectfully request that the Court consider the additional speech/language evaluation attached as Exhibit B to the M.B. Affidavit in Opposition to Defendant's Motion for Summary Judgment for reasons set forth in the attached Affirmation of Linda A. Geraci and Memorandum of Law.

WHEREFORE, it is respectfully requested that Plaintiffs' Motion for Summary Judgment be granted in its entirety and Defendant's Motion for Summary Judgment be denied.

Dated: August 8, 2007
Fishkill, NY 12590

Yours, etc.

Linda A. Geraci (LAG 0687)
Attorney for Plaintiffs
21 Old Main Street, Suite 203
Fishkill, NY 12524
(845) 896-1106